# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DAISY INVESTMENT CORP., *et al.*, | ) | CASE NO. 1:22-cv-1276 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SEVEN HILLS, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |
| | ) | |

Before the Court is Defendant's motion for summary judgment. (ECF No. 29). Plaintiffs filed a timely opposition, (ECF No. 33), and Defendant filed a reply in support of the Motion, (ECF No. 35). For the reasons discussed below, Defendant's motion for summary judgment is **GRANTED** and judgment is entered in favor of Defendant on all claims.

## I.      FACTUAL BACKGROUND

### A.      The Property and its Zoning History

Plaintiff Steven Gale is the sole owner of Plaintiffs Daisy Investment Corp. ("Daisy") and Falcon Investment Corp. ("Falcon"). (ECF No. 33-1, PageID #454). Gale, Daisy, and Falcon (collectively, the "Sellers"), together own 9.9 acres of real estate located at 7391 Broadview Road and 7403 Broadview Road, in Seven Hills, Ohio which are assigned Cuyahoga County Permanent Parcel Numbers ("PPN") 552-17-009, 552-17-011, 552-17-057, and 552-17-058 (the "Property"). (ECF No. 1, PageID #2; ECF No. 31, PageID #230, 299; ECF No. 33-1, PageID #454–55). These four individual parcels essentially form a large rectangle, save for a single rectangular parcel located at 7393 Broadview Road (which is owned by other parties and sandwiched between the frontage of PPN 552-17-011 and PPN 552-17-009 at 7391 and 7403 Broadview Road). (ECF No. 31, PageID #299; ECF No. 33-1, PageID #455). The cutout parcel at 7393 Broadview Road

is currently used for an office building that was built sometime after 2006.  (ECF No. 31, PageID #242–43).  Otherwise, the Property is abutted by: (i) a Panera Bread restaurant and the Seven Hills Service Garage to the north; (ii) residential property to the east; and (iii) residential property to the south by nine individual lots, except for a single bank that is adjacent to Broadview Road.  (*Id.* at 233–34, 237–40; ECF No. 33-6, PageID #543–44).

Gale purchased PPN 552-17-009 in March 2006.  (ECF No. 33-1, PageID #454).  Daisy took ownership of PPN 552-17-011 and PPN 552-17-058 in June 1977.  (*Id.*).  Falcon took ownership of PPN 552-17-057 in July 2015.  (*Id.*).  Currently, two residential homes are located on the front parcels of the Property abutting Broadview Road, at 7391 and 7403 Broadview Road, while the remainder of the Property is undeveloped.  (ECF No. 31, PageID #231–33, 240–41, 299; ECF No. 33, PageID #432; ECF No. 33-1, PageID #454–55).  The two residential homes are currently used as a rental property, and have been for years, with the Sellers collecting rental income from the homes.  (ECF No. 31, PageID #231–33, 240–41)

Prior to 1997, the Property was zoned solely for single family residential use.  (ECF No. 29-3, PageID #196; ECF No. 31, PageID #246–47).  In 1997, Defendant City of Seven Hills ("Seven Hills") rezoned much of the property along Broadview Road, including the Property, as part of the new Broadview Road Development District ("BRDD") set forth under Seven Hills Codified Ordinance Chapter 976.  (ECF No. 29-3; ECF No. 29, PageID #116; ECF No. 33, PageID #433).  The BRDD separated the area into four different parcels (Parcel 1, Parcel 2, Parcel 3, and Parcel 4) and created different zoning regulations for each parcel.  (ECF No. 29-3, PageID #196–99).  The Property is part of Parcel 3.  (*Id.* at PageID #198–99; ECF No. 29-1, PageID #116; ECF No. 33, PageID #433).  Parcel 3, and therefore the Property, is currently zoned for: "Office Buildings multiple occupancy office buildings including business and administrative organizations

2

and professional offices, financial, governmental, public utility and sales, provided only samples are displayed or stored on the premises and no goods are distributed therefrom. Retail stores or outlets will not be permitted in such buildings." (ECF No. 29-3, PageID #198–99). The zoning regulations also allow for accessory uses and any similar main use that is determined by the Seven Hills Planning Commission (the "Planning Commission") and confirmed by the Seven Hills City Council ("City Council"). (*Id.* at PageID #199). The parcels at 7403 and 7391 Broadview Road were allowed to continue their non-conforming residential use. (ECF No. 29-2, PageID #151; ECF No. 33, PageID #434).

**B.    Plaintiffs Attempts to Develop and Rezone the Property**

From 2017 to the present, the Sellers retained the services of Steven Roth, who is part of the Guggenheim Commercial Real Estate Group, to help market, sell, and lease the Property. (ECF No. 33-1, PageID #456). Around 2017, the Sellers submitted a rezoning application to develop the Property for retail use and build an assisted living medical facility. (ECF No. 31, PageID #255–56, 262–63, 316; ECF No. 33-1, PageID #456). Seven Hills denied this rezoning request. (ECF No. 31, PageID #262–63; ECF No. 31-1, PageID #456).

In September 2021, the Sellers and Shamrock Building, Inc. ("Shamrock") executed a purchase agreement for the Property that was contingent on the Property being rezoned for use as a self-storage facility (Shamrock's intended use for the Property). (ECF No. 31, PageID #344–53; ECF No. 33-1, PageID #456). In April 2022, the Sellers and Shamrock (collectively, "Plaintiffs") submitted a letter to City Council requesting an amendment of the existing zoning regulations in the BRDD and seeking approval of their development plan for the Property. (ECF No. 1-1, PageID #7). Plaintiffs sought amendment of the zoning regulations to allow use of the Property as a self-

storage facility and attached proposed amendments to the BRDD, as well as a proposed site development plan for a self-storage facility.  (*Id.* at PageID #7–28).

In June 2022, Seven Hills sent a letter to Plaintiffs informing them that their request and application for amendment to the BRDD had been rejected, stating:

> The Mayor, Administration, and City Council have carefully reviewed this request.  The proposal does not fit within the vision that the Administration and Council have for this property, and the taxpayers.
>
> Respectfully, your request is not well taken, and the above-proposed zoning amendment will not be further considered for implementation by the City of Seven Hills.

(ECF No. 1-2, PageID #29).

### C.     The Citation for Driveway-Related Code Violations

In November 2021, Seven Hills issued a citation to Gale for code violations related to the driveway at the 7403 Broadview Road residence (PPN 552-17-009); specifically, the citation was for failure to repair or replace a driveway as required by Seven Hills Codified Ordinance § 1143.06.  (ECF No. 29-6, PageID #210–11; ECF No. 31, PageID #377; ECF No. 33-1, PageID #457).  Section 1143.06 requires owners to keep driveways in a proper state of repair, "free of potholes and other surface irregularities and shall be maintained in accordance with the specifications prescribed in Chapters of these Codified Ordinances."  Seven Hills Codified Ordinance § 1143.06(a), (c).

## II.     PROCEDURAL BACKGROUND

On July 19, 2022, Plaintiffs filed a complaint against Seven Hills.  (ECF No. 1).  The complaint alleges that Seven Hills ignored and then denied Plaintiffs' application for a zoning amendment to allow development of their property for a viable use.  (*Id.* at PageID #2–3).  It also alleges that Seven Hills selectively targeted Gale for alleged code violations related to the

condition of a driveway on the relevant property.  (*Id.* at PageID #3).  Plaintiffs assert two claims under 42 U.S.C. § 1983 related to Seven Hills's zoning regulations: (i) a violation of substantive due process, in violation of the Fourteenth Amendment; and (ii) a takings claim, in violation of the Fifth Amendment.  (*Id.* at PageID #3–4).  They also assert a single claim related to the driveway citations for "Selective, Malicious Code Enforcement."  (*Id.* at PageID #4–5).  Plaintiffs request damages, as well as declaratory and injunctive relief.  (*Id.* at PageID #5).

On October 31, 2023, Seven Hills filed the instant motion for summary judgment.  (ECF No. 29).  Seven Hills raised arguments concerning the ripeness of the takings and substantive due process claims, the standing of Shamrock Builders, Inc., and the overall merits of Plaintiffs' claims.  (ECF No. 29-1).  After the Court granted an extension of time, Plaintiffs filed their response in opposition on December 8, 2023.  (ECF No. 33).  Plaintiffs' response includes objections to the affidavits of Brian Frantz and Jeffrey Grassi.  (*Id.* at PageID #439–40).  On December 29, 2023, Seven Hills filed its reply in support of the motion for summary judgment.  (ECF No. 35).

After briefing had closed, Plaintiffs moved for leave to file a surreply, *instanter*. (ECF No. 36).  Seven Hills opposed the motion and alternatively moved for leave to file a response to the surreply.  (ECF No. 37).  As justification for filing a surreply, Plaintiffs state their need to clarify the record by correcting alleged misstatements by Seven Hills in their reply brief concerning the zoning amendment and code variance process.  (ECF No. 36, PageID #654).  The Federal Rules of Civil Procedure and this district's Local Rules do not expressly permit the filing of surreplies.  *See* L.R. 7.1.  As such, the decision of whether to grant leave to file a surreply lies entirely within the discretion of the Court.  *See Mirando v. United States Dep't of Treasury*, 766 F.3d 540, 549 (6th Cir. 2014); *Key v. Shelby Cty.*, 551 F. App'x 262, 264–65 (6th Cir. 2014); *see also ACLU of*

5

*Ky. v. McCreary County*, 607 F.3d 439, 451 (6th Cir. 2010) ("[A] district court has broad discretion to manage its docket.").

Courts in the Sixth Circuit rarely grant leave to file surreplies and usually do so only in circumstances "[w]hen new submissions and/or arguments are included in a reply brief, and a non-movant's ability to respond to the new evidence has been vitiated." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003); *see, e.g.*, *Bell v. Toledo Gaming Ventures, LLC*, No. 3:21-cv-770, 2023 U.S. Dist. LEXIS 176399, at *29–30 (N.D. Ohio Sep. 30, 2023); *Metron Nutraceuticals, LLC v. Adams*, No. 1:20-cv-01803, 2023 U.S. Dist. LEXIS 165852, at *4-5 (N.D. Ohio Sep. 19, 2023); *Aslani v. Sparrow Health Sys.*, No. 1:08-cv-298, 2009 U.S. Dist. LEXIS 102142, at *72 (W.D. Mich. Nov. 3, 2009) ("It is well-established that parties do not have a right to file a sur-reply brief, whether under the Federal Rules of Civil Procedure or the Local Civil Rules of our district, and both this court and other federal courts rarely grant leave to file a sur-reply."). In this case, Plaintiffs do not point out any new evidence or arguments raised in Seven Hills's reply brief, and "a party's desire to point out mischaracterizations or misrepresentations of caselaw, even if helpful, does not provide grounds for the filing of sur-replies." *In re Upstart Holdings, Inc. Sec. Litig.*, No. 2:22-cv-02935, 2023 U.S. Dist. LEXIS 175451, at *26 (S.D. Ohio Sep. 29, 2023). Reviewing the record before it, including the relevant city ordinances, the Court can determine the ability of the Planning Commission and the Board of Zoning Appeals to review and process certain zoning requests. The Court finds that the circumstances presented do not warrant the filing of a surreply.

Accordingly, Plaintiffs' motion for leave to file a surreply (ECF No. 36) is **DENIED** and the Court shall give the proposed surreply no consideration in the disposition of this motion. Seven

Hills's request to file a response to the surreply (ECF No. 37, PageID #662) is hereby **DENIED AS MOOT**.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment.  The Rule states that the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if it is "based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party."  *Henderson v. Walled Lake Consol. Schools*, 469 F.3d 479, 487 (6th Cir. 2006).  A fact is material if "its resolution might affect the outcome of the suit under the governing substantive law."  *Id*.  The moving party bears the burden of showing that no genuine issues of material fact exist.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The court views the facts and draws all reasonable inferences in favor of the non-moving party.  *Pittman v. Experian Information Solutions, Inc*., 901 F.3d 619, 628 (6th Cir. 2018).  Once the moving party satisfies its burden, the burden shifts to the non-moving party to produce evidence that demonstrates that there is a genuine dispute of a material fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986); *Zinn v. United States*, 885 F. Supp. 2d 866, 871 (N.D. Ohio 2012) (citing *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992)).

## IV.    DISCUSSION

### A.    Plaintiffs' Objections to Submitted Affidavits

Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "The objection contemplated by the Rule is not that the material has not been submitted in admissible form, but that it cannot be."  *B&S Transp., Inc. v. Bridgestone Ams. Tire Operations*,

LLC, 171 F. Supp. 3d 669, 678–79 (N.D. Ohio 2016) (quoting *ForeWord Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 U.S. Dist. LEXIS 125373, at *5 (W.D. Mich. Oct. 31, 2011)) (cleaned up).  In the face of such an objection, the proponent of the supporting material has the burden to demonstrate that the material is admissible as presented *or* to explain how it could be presented in a form that would be admissible.  *Mangum v. Repp*, 674 F. App'x 531, 536–37 (6th Cir. 2017) (citing Fed. R. Civ. P. 56(c) (2010 Advisory Committee Notes)).  "Rule 56(e) requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify." *Wiley v. United States*, 20 F.3d 222, 225–26 (6th Cir. 1994) (explaining that trial courts can only consider admissible evidence when ruling a motion for summary judgment).

Plaintiffs object to the use of the Affidavit of Jeffery Grassi ("Grassi Affidavit") (ECF No. 29-6) because it fails to explain the basis of any personal knowledge for his assertions.  (ECF No. 33, PageID #439).  They also object to the use of the Affidavit of Brian Frantz ("Frantz Affidavit") (ECF No. 29-4) because it is an expert opinion that makes only conclusory statements and provides no substance or analysis.  (ECF No. 33, PageID #439–40).  Seven Hills responds that both challenged affidavits do not provide unsupported statements or conclusions and they are supported by personal knowledge, with: (i) the Frantz Affidavit providing statements based on Frantz's personal review of the applicable zoning regulations and Plaintiffs' request for an amendment to those regulations; and (ii) the Grassi Affidavit providing statements based on Grassi's personal knowledge of Plaintiffs' zoning request and his position as Seven Hills Building Commissioner.  (ECF No. 35, PageID #585).

The Court **OVERRULES** Plaintiffs' evidentiary objections to both the Grassi Affidavit and Frantz Affidavit.  The Grassi Affidavit lays out the basis of Grassi's personal knowledge of

the supposed concerns with the zoning amendment—his position as the Seven Hills Building Commissioner. Moreover, the Court is convinced that Grassi would be able to provide testimony at trial as to the exact nature of his personal knowledge on this subject. The Frantz Affidavit provides statements regarding the contents of Plaintiffs' zoning amendment request, how it lacked specific information, and how the current zoning regulations did not permit a self-storage facility. The Court does not find that any of these statements are conclusory and without support. Regardless, the Court notes that it did not consider the statements in the Frantz Affidavit when resolving the merits of the instant motion. Finally, for any specific contested issue of fact, the Court is mindful of the Federal Rules of Civil Procedure and the requirements concerning admissibility of the evidence as it resolves the motion for summary judgment.

### B. Zoning-Related Claims (Substantive Due Process and Regulatory Takings Claims)

#### 1. Finality Requirement

Seven Hills argues that Plaintiffs' substantive due process and takings claims are not ripe for judicial review because the finality requirement has not been satisfied, due to Plaintiffs failing to exhaust all local administrative remedies related to the zoning regulations. (ECF No. 29-1, PageID #120–23). Plaintiffs respond that the Supreme Court eliminated the exhaustion requirement for certain constitutional claims in *Knick v. Twp. of Scott*.[1] (ECF No. 33, PageID #441–42). They also argue that their claims are ripe because Seven Hills reached a final decision and a definitive position on the zoning regulations at issue. (*Id.* at PageID #442–44).

The Sixth Circuit applies a strict finality requirement in cases where a plaintiff alleges a takings or substantive due process claim based on zoning regulations. *See Nasierowski Bros. Inv. Co. v. Sterling Heights*, 949 F.2d 890, 898 (6th Cir. 1991) ("In zoning matters, where taking or

---

[1] 588 U.S. 180, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019).

substantive due process claims are alleged, the law clearly prescribes that finality requirements be satisfied before these claims can be entertained in federal court."); *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010) (" In the land-use context, the demands of 'a concrete factual context' and 'a dispute that is likely to come to pass' converge in an insistence on 'finality,' an insistence that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute.").  This finality requirement originated in *Williamson*, where the Supreme Court held that "a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a *final decision* regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), *overruled on other grounds by Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019) (emphasis added).

Plaintiffs are correct that there is no exhaustion requirement for takings and substantive due process claims under § 1983 after *Knick*.  *See Pakdel v. City & County of San Francisco*, 594 U.S. 474, 479, 141 S. Ct. 2226, 2230 (2021).  However, the Sixth Circuit has held that *Williamson's* finality requirement remains intact, explaining:

> Prior to *Knick*, under *Williamson*, a regulatory-takings claim was not ripe until (1) the government reached a final decision, 473 U.S. 172, 186, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985), and (2) the plaintiff sought compensation through state procedures, *id.* at 194–95.  *Knick* overruled the state-litigation requirement, 588 U.S. 180, 206, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019), making a federal forum available to plaintiffs earlier.  But it did not disturb *Williamson's* finality requirement.  *Id.* at 188.

*McCausland v. Charter Twp. of Canton*, No. 23-1479, 2024 U.S. App. LEXIS 14916, at *16 n.6 (6th Cir. June 18, 2024).  Thus, the Court must determine whether a final decision has been reached with regards to this case.

Under current precedent, a final decision in land-use cases simply requires "the government to have adopted a 'definitive position' as to 'how the regulations at issue apply to the particular land in question.'"  *Catholic Healthcare Int'l, Inc. v. Genoa Charter Twp.*, 82 F.4th 442, 448 (6th Cir. 2023) (quoting *Pakdel*, 594 U.S. at 478).  The finality requirement, *i.e.*, ripeness, does not necessitate the exhaustion of all local administrative remedies or compliance with local administrative processes but instead "requires only a 'relatively modest' showing that the 'government is committed to a position' as to the strictures its zoning ordinance imposes on a plaintiff's proposed land use."  *Id.* (quoting *Pakdel*, 594 U.S. at 479) (explaining how the district court conflated exhaustion and ripeness/finality in the land-use context).

Reviewing the record before it, the Court finds that the finality requirement has been satisfied because Seven Hills issued a final decision as to how the Property should be zoned and whether the zoning regulations should be amended.  Plaintiffs submitted a letter/application to City Council requesting amendment of the zoning codes and regulations in the BRDD that govern the use of the Property.  (ECF No. 1-1).  The application specifically requested amendment of the zoning codes to allow construction of a self-service storage facility on the Property, with the application submitting detailed amendments, a proposed development plan, and a summary of Plaintiffs' project.  (*Id.*).  In response, Seven Hills sent a letter to Plaintiffs that: (i) stated the request for amendment had been carefully reviewed by Seven Hills's "Mayor, Administration, and City Council"; (ii) "[t]he proposal does not fit within the vision that the Administration and Council have for this property, and the taxpayers"; and (iii) the proposed amendments "will not be

further considered for implementation by the City of Seven Hills."  (ECF No. 1-2, PageID #29). Such a response clearly indicates that Seven Hills has adopted a "definitive position" as to the zoning of the Property and whether it can be used as a self-storage facility.

Seven Hills implies that Plaintiffs' application for amendment was denied because it was conclusory, provided minimal information, and otherwise lacked support.  (ECF No. 29-1, PageID #121–22).  But the letter rejecting Plaintiffs' proposed amendments did not state those concerns as a reason for the denial and it does not otherwise provide Plaintiffs with notice of the application's deficiencies or the need for re-application.  (*See* ECF No. 1-2).  Seven Hills's argument is also belied by the affidavit of Jeffrey Grassi, Seven Hills Building Commissioner, who attested that the zoning amendment request was denied based on nuisance concerns, storm water management issues, and the proposed storage facility being "not in accord with the overall development plan under Chapter 976."  (ECF No. 29-6, PageID #209).  There is no mention of insufficient evidence or support and no other evidence on the record as to the reasoning behind Seven Hills's rejection of the amendments.

Seven Hills contends there is no final decision because Plaintiff could still submit a rezoning application for the Property, but they have not convinced the Court: (i) that the application previously filed by Plaintiffs did not serve the same purpose as such an application, or that there is any meaningful difference between the two; and (ii) such an application would not be futile in light of city's clear rejection letter.  Seven Hills further argues that Plaintiffs can request a variance to the zoning code.  Even assuming that Plaintiffs could apply for a variance under Seven Hills Codified Ordinance § 939.06(c), such a request would be futile in light of the rejection letter.  City Council would likely reverse any decision by the Board of Zoning Appeals to grant such a variance, having made clear it finds the development of a storage facility on the Property to be

contrary to the vision for the Property and the purpose of the regulations.  *See* Seven Hills Codified Ordinance § 939.07 (providing that City Council has "the power to approve, amend, modify or reverse any decision of the Board of Zoning Appeals if Council finds that the decision of the Board is contrary to the purpose and intent of the zoning ordinances").  Accordingly, the finality requirement is satisfied and Plaintiffs' zoning-related claims are ripe.

          2.     *Standing*

     Seven Hills argues that Shamrock lacks standing to maintain any claims related to the Property's zoning because it has only entered a contingent purchase agreement for the Property where no property interest has transferred; therefore, it has no compensable property interest in the Property.  (ECF No. 29-1, PageID #125–26).  Plaintiffs respond that Shamrock has standing because: (i) the purchase agreement between the Sellers and Shamrock is a sufficient interest in the Property; and (ii) Shamrock was one of the petitioners in the application for amendment, whose denial was the basis for the takings claim in this action.  (ECF No. 33, PageID #446).  Seven Hills replies that the potential future purchase of the Property is not a sufficient property interest to establish standing for a zoning-related challenge.  (ECF No. 35, PageID #591).

     A plaintiff must prove standing in response to a defendant's motion to dismiss that challenges standing under Article III.  *Disalvo v. Intellicorp Records, Inc.*, No. 1:16 CV 1697, 2016 U.S. Dist. LEXIS 133344, *8 (N.D. Ohio Sep. 27, 2016) (citing *Key v. DSW, Inc.*, 454 F.Supp.2d 684 (S.D. Ohio 2006)).  Federal courts have limited jurisdiction to hear cases or controversies.  Article III § 2, Clause 1.  Article III standing requires a plaintiff to show, among other things, an "injury in fact" that is both: (i) "concrete and particularized;" and (ii) "actual or imminent, not conjectural or hypothetical."  *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130,

119 L. Ed. 2d 351 (1992)).  To establish an Article III injury, "plaintiffs must allege the 'invasion of a legally protected interest.'"  *CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 485 (6th Cir. 2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 300, 339 (2016)).

It is undisputed that Shamrock entered into a sales agreement with the Sellers that is contingent upon the adoption of the proposed zoning amendments to the Property to allow construction of a self-storage facility.  (*See* ECF No. 29-1, PageID #126; ECF No. 33-1, PageID #456; ECF No. 31, PageID #344–53; ECF No. 33, PageID #446).  Plaintiffs do not point to any authority for the proposition that contingent contracts are considered property under Ohio law.  The Sixth Circuit has held that a contract cannot create a constitutionally protected interested in having a condition precedent fulfilled, stating that "[a] property owner cannot create an interest in discretionary re-zoning simply by conveying his land to another party contingent upon obtaining re-zoning."  *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 858–59 (6th Cir. 2012).  The panel distinguished *Wilson v. Trustees Union Township*, No. CA-98-06-036, 1998 Ohio App. LEXIS 5025 (Ohio Ct. App. Oct. 26, 1998), explaining that the Ohio Court of Appeals did not hold the plaintiff had a property interest in a contract based on a contingency, and undercutting the court's analysis.[2]  *EJS Props.*, 698 F.3d at 858 n.10.  The panel noted that "Ohio has repeatedly emphasized that 'one who purchases property in the hopes of gambling on securing a change in zoning has no right to complain if the legislative body declines to rezone the property for the gambling buyer's benefit.'"  *Id.* (citing *Wilson*, 1998 Ohio App. LEXIS 5025, at *12; *Smythe v. Butler Twp.*, 85 Ohio App. 3d 616, 620 N.E.2d 901, 904 (Ohio Ct. App. 1993)).

---

[2] The panel in *EJS Props.* explained that the Supreme Court case relied on by the *Wilson* court to justify a finding of standing for the plaintiff (*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)), "does not discuss whether the real-estate developer had acquired a property interest, because an equal-protection claim does not require an injury to property."  *EJS Props.*, 698 F.3d at 858 n.10.

Here, the Court finds that Shamrock does not have a protected property interest in the Property because the contingent contract has not been fully executed and it has no current possessory interest in the Property.  Moreover, the contingent contract does not convey a constitutionally protected interest in the discretionary rezoning.  Accordingly, Shamrock is **DISMISSED** as Plaintiff in this action for lack of standing.[3]

        3.     *Substantive Due Process Claim – Merits*

The Fourteenth Amendment states, "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  This clause has a procedural and a substantive component.  *EJS Props.*, 698 F.3d at 855.  While procedural due process requires "that the government provide a fair procedure when depriving someone of life, liberty, or property," substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."  *Id.* (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)); *see also Zinermon v. Burch*, 494 U.S. 113, 115, 108 L. Ed. 2d 100, 110 S. Ct. 975 (1990).  "[C]itizens have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions."  *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)).  "To state a substantive due process claim in the context of zoning regulations, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists and (2) that constitutionally protected interest has been deprived through arbitrary and capricious action."  *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 747 (6th Cir. 2002) (citing, *inter alia*, *Silver v.*

---

[3] Although the complaint does not specify, the cause of action for selective/malicious code enforcement does not appear to be asserted on Shamrock's behalf, because the violation was issued against Gale.  If Plaintiffs intended to assert the claim on Shamrock's behalf, it would need to be dismissed for lack of standing because the complaint alleges no actual, concrete injury to Shamrock.

*Franklin Twp., Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992); and *Buckeye Cmty. Hope Found. v. City of Cuyahoga Falls*, 263 F.3d 627, 641–43 (6th Cir. 2001)).

Plaintiffs assert a substantive due process claim relating to the current zoning regulations governing the Property.  (ECF No. 1, PageID #4).  Seven Hills argues that Plaintiffs claim fails as a matter of law because they have no legitimate expectation or vested interest in developing the Property into a self-storage facility and Seven Hills's denial of the requested amendment to the zoning regulations was not arbitrary and capricious.  (ECF No. 29-1, PageID #129–30).  Plaintiffs respond that there is an issue of material fact as to whether Seven Hills's actions were arbitrary and capricious because the current zoning regulations have no substantial relation to the public health, safety, morals, or general welfare.  (ECF Doc. 33, PageID #448).  Notably, Plaintiffs do not address whether there was a constitutionally protected interest, seemingly conceding the issue.

To the extent the complaint identifies a constitutionally protected interest, it simply states that "Plaintiffs have a vested right to develop the property and put it to a viable use."  (ECF No. 1, PageID #4).  This is a vague allegation and Plaintiffs' response brief does not clarify this "vested interest," cite any authority in support, or otherwise address the sufficiency of this alleged interest.  As such, Plaintiffs have failed to articulate or cite law supporting the existence of the specific vested interest of which they were allegedly deprived.  This deficiency alone is fatal to Plaintiffs' substantive due process claim.

Even construing the complaint to assert a protected property interest in the right to develop the property for a self-storage facility (which was violated by the current zoning regulations and Seven Hills's decision to decline Plaintiffs' proposed amendments), the Court finds the claim still fails.  The Sixth Circuit has clarified what constitutes a sufficient property interest to sustain a substantive due process claim, stating:

16

> Even though individuals often claim property interests under various provisions of the Constitution, such interests are not created by the Constitution. Instead, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 605 (6th Cir. 2016) (citations and quotation marks omitted). Thus, the Court must look to state law to determine whether Plaintiffs had a protectible property interest to sustain a substantive due process claim. The Sixth Circuit has further clarified that "[u]nilateral expectations of a property interest are insufficient to trigger due process concerns." *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001); *see also Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (explaining that a plaintiff must have a legitimate entitlement to a property interest and not merely "an abstract need or desire for it" or a "unilateral expectation of it."). With this in mind, the Sixth Circuit applies a so-called "entitlement test" to determine whether an alleged property right is protected by the Fourteenth Amendment. *Dorr v. City of Ecorse*, 305 F. App'x 270, 275 (6th Cir. 2008). "In a case challenging denial of a zoning application, this Court 'must look specifically to state zoning laws to determine whether a legitimate claim of entitlement or a justifiable expectation exists." *Ziss Bros. Constr. Co. v. City of Independence*, 439 F. App'x 467, 471–72 (6th Cir. 2011) (quoting *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005)).

Plaintiffs have not demonstrated that they have a legitimate claim of entitlement or a justifiable expectation that the Property should be zoned to permit the development of a self-storage facility. The record demonstrates, and the parties do not dispute, that the Property was zoned for residential use before 1997 and Seven Hills rezoned the Property in 1997 to permit only multiple occupancy office buildings through enactment of the BRDD. (ECF No. 29-3; ECF No. 31, PageID #236–47; ECF No. 29-1, PageID #116; ECF No. 33, PageID #434). Plaintiffs

purchased the various parcels of the Property in 1977, 2006, and 2015.  (ECF No. 33-1, PageID #454).  At no point did Plaintiffs have a reasonable expectation that the Property could be developed for use as a self-storage facility under the applicable zoning regulations.  While a property owner might have a justifiable expectation in existing zoning classifications, "Ohio does not recognize a protected property interest in *requested rezoning*" or zoning modifications.  *See EJS Props., LLC v. City of Toledo*, 736 F. Supp. 2d 1123, 1132 (N.D. Ohio 2010).

　　To demonstrate that Plaintiffs had a legitimate claim of entitlement to, or a justifiable expectation of, a variance or amendment to the existing zoning regulations, they needed to demonstrate that Seven Hills lacked discretion to deny Plaintiffs' proposed amendments and development proposal.  *See Silver*, 966 F.2d at 1036 (citing *G.M. Eng'rs & Assocs., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 331 (6th Cir. 1990)); *see also J-II Enters. v. Bd. of Comm'rs*, 135 F. App'x 804, 807 (6th Cir. 2005) ("But land owners have no constitutionally protected property interest in developing their land unless zoning authorities lack discretion to deny the land owners permission to develop the land.").  But Plaintiffs cannot make such a showing; Seven Hills has the discretion to amend the applicable zoning regulations in the BRDD.  *See* Seven Hills Codified Ordinance § 953.01 ("The Council may on its own motion or on petition, after the notice and hearings required by law, amend the regulations, districts and building lines hereby established, . . ."); Ohio Rev. Code § 713.10 ("The legislative authority of such municipal corporation may amend or change the number, shape, area, or [zoning] regulations of or within any district, . . .").

　　Even if Plaintiffs had established a protected property or liberty interest in building a self-storage facility on the Property, the substantive due process claim still fails because Seven Hills actions were rationally related to a legitimate government interest.  Courts apply a rational basis test for substantive due process claims when no fundamental right is implicated.  *See EJS Props.*,

698 F.3d at 861–62; *Gardner v. City of Cleveland*, 656 F. Supp. 2d 751, 760-61 (N.D. Ohio 2009). A local zoning ordinance or regulation withstands a substantive due process challenge so long as there is a rational relationship between the ordinance/regulation and a legitimate government interest or purpose.  *Richardson v. Twp. of Brady*, 218 F.3d 508, 513 (6th Cir. 2000) ("A local zoning ordinance survives a substantive due process challenge if there exists a rational relationship between the terms of the ordinance and a legitimate governmental purpose."); *Gardner*, 656 F. Supp. 2d at 751 ("Federal substantive due process is satisfied if there is a rational relationship between the ordinance and its purpose." (citing *Martinez v. California*, 444 U.S. 277, 283, 100 S. Ct. 553, 62 L. Ed. 2d 481 (1980))); *Skilwies v. City of Huber Heights*, 689 F. Supp. 3d 540, 550 (S.D. Ohio 2023) ("Courts generally have emphasized the breadth of municipal power to control land use and have sustained the regulation if it is rationally related to legitimate state concerns." (quoting *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981))).

Plaintiffs bear the burden of demonstrating that Seven Hills's actions lacked any rational basis.  *Gardner*, 656 F. Supp. 2d at 761; *Moskovic v. City of New Buffalo*, 638 F. Supp. 3d 770, 795–96 (W.D. Mich. 2022).  "Rational basis review is a deferential standard under which government action is afforded a strong presumption of validity."  *Gardner*, 656 F. Supp. 2d at 761 (citing *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005)).  "Under rational basis review, the defendant 'has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data.'"  *Loesel v. City of Frankenmuth*, 692 F.3d 452, 465 (6th Cir. 2012) (quoting *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005)).

Moreover, the purported rational basis "need not have a foundation in the record." *Midkiff*, 409 F.3d at 770.

Here, Seven Hills has identified the legitimate interests at issue as "protecting the public health, safety, and welfare." (ECF No. 29-1, PageID #124–25). The BRDD states its purpose and intent was to, in part, "promote the general public health, safety, convenience, comfort and general welfare of the residents of the City." Seven Hills Codified Ordinance § 976.01(b)(6). The requested zoning amendments were denied, in part, because Seven Hills had concerns over the likely disturbances and nuisance that a self-storage facility would cause to abutting residential property owners, based on the 24-hour nature of such a facility (which would facilitate users exiting and entering at late hours and require a well-lit facility throughout the night). (ECF No. 29-6, PageID #209). The record reflects that the southern edge of the Property is adjoined by a string of single-home residences. (ECF No. 1-1, PageID #26; No. 33-6, PageID #554). Abating a public nuisance to residential areas is a legitimate government interest that falls within the heart of the state's police powers to preserve the public health, morals, and safety. *Accord Embassy Realty Invs., Inc. v. City of Cleveland*, 572 F. App'x 339, 344 (6th Cir. 2014); *Grater v. Damascus Twp. Trs.*, 614 F. Supp. 3d 591, 600 (N.D. Ohio 2022). Thus, Seven Hills's denial of Plaintiffs' proposed amendments and plan to develop the Property for use as a self-storage facility is rationally related to furthering the government's legitimate interests. *See 37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 620 (6th Cir.1997) ("[I]f any conceivable legitimate governmental interest supports the contested ordinance, that measure is not 'arbitrary and capricious' and hence cannot offend substantive due process norms.").

Seven Hills was not required to choose the most efficient or best zoning regulations controlling the Property. This Court has repeatedly stated that "a legislative body need not even

select the best or the least restrictive method of attaining its goals so long as the means selected are rationally related to those goals." *Richardson,* 218 F.3d at 515 (quoting *Schenck v. City of Hudson,* 114 F.3d 590, 594 (6th Cir. 1997)). "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control." *Turner v. City of Englewood*, 195 F. App'x 346, 357 (6th Cir. 2006) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 388, 47 S. Ct. 114 (1926)) (internal quotation marks omitted). The Court finds the city's actions were rationally related to a legitimate state interest. Accordingly, Seven Hills is entitled to summary judgment on Plaintiffs' substantive due process claim.

### 4.     Takings Claims – Merits

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. "A taking may assume one of two forms: *per se*, also known as a physical taking, or regulatory." *McCarthy v. City of Cleveland*, 626 F.3d 280, 284 (6th Cir. 2010) (citing *Waste Mgmt., Inc. of Tenn. v. Metro. Gov't of Nashville and Davidson County*, 130 F.3d 731, 737 (6th Cir.1997)). "A physical taking occurs when 'the government physically intrudes upon a plaintiff's property.'" *Id.* (quoting *Waste Mgmt.*, 130 F.3d at 737). By contrast, a "regulatory taking" concerns land-use regulations. *Penn Cent. Transp. Co. v. City of New York (Penn Central)*, 438 U.S. 104, 123–24, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978) (citing *Armstrong v. United States*, 364 U.S. 40, 49, 80 S. Ct. 1563, 4 L. Ed. 2d 1554 (1960)). Plaintiffs are not alleging a physical taking. They instead assert a regulatory taking based on Seven Hills's "refusing to rezone the Property to a viable use." (ECF No. 1, PageID #4).

There are two types of regulatory takings claims. The first is a total regulatory taking, "when a governmental enactment leaves a property owner with '*no* productive or economically beneficial use' of his property[.]" *McCarthy*, 626 F.3d at 284 (quoting *Lucas v. S.C. Coastal*

*Council*, 505 U.S. 1003, 1019, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992) (emphasis in the original). The second is a partial regulatory taking, when a less intrusive regulation by the government prevents a property owner from some, but not all, economic use of his land. *D.A.B.E., Inc. v. City of Toledo*, 292 F. Supp. 2d 968, 971 (N.D. Ohio 2003) (citing A*nderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493 (6th Cir. 2001)).

a.      Total Regulatory Taking

In their complaint, Plaintiffs do not explicitly state whether they are asserting a total or partial regulatory takings claim.  The complaint asserts that the current zoning regulations deprive the Property of *any* economically viable use.  (ECF No. 1, PageID #2–4).  Plaintiffs' response brief argues that the current zoning regulations and Seven Hills's denial of the zoning amendment have denied Plaintiffs "all economically viable uses of the Property, or portions thereof."  (ECF No. 33, PageID #447).  Under the current applicable zoning regulations, the Property can be developed and used for "multiple occupancy office buildings including business and administrative organizations and professional offices, financial, governmental, public utility and sales."  (ECF No. 33-3, PageID #198–99).  Moreover, it is undisputed that two of the four parcels on the Property are currently used for single-family residences, a preexisting nonconforming use, which generates rental income for the Sellers.  (ECF No. 31, PageID #232–33, 240–42; ECF No. 33, PageID #434). Although Plaintiffs contend that the collection of rent is barely enough to cover taxes and maintenance, and the rent generates little income, this still constitutes a productive use of the Property.  The standard for a total regulatory taking is whether the regulation at issue denies *all* economically beneficial or productive use of the property.  *See McCarthy*, 626 F.3d at 284; *Lucas*, 505 U.S. at 1016.  Because the Property may be used for other purposes, including its current use

22

for several single-family residences, the zoning regulations on the Property do not deny Plaintiffs of *all* economically viable use of their land and do not constitute a total regulatory taking.

        b.     Partial Takings Claim

In a footnote within their response brief, Plaintiffs contend, without elaboration, that they can establish a partial taking during trial under the standard set forth under *Penn Central*.  (ECF No. 33, PageID #447 n.1).  Depending on the level of intrusion created by the applicable zoning regulation and the governmental interest at stake, a partial taking may still entitle a property owner to just compensation.  *See D.A.B.E.*, 292 F. Supp. 2d at 971–72.  Partial regulatory takings claims require district courts to conduct an *ad hoc* factual inquiry and analyze several factors identified by the Supreme Court in *Penn Central*, which have "particular significance": (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with the plaintiff's distinct investment-backed expectations; and (3) the character of the governmental action.  *Penn Central*, 438 U.S. at 124; *Coal. for Gov't Procurement v. Fed. Prison Indus.*, 365 F.3d 435, 483 (6th Cir. 2004); *Waste Mgmt.*, 130 F.3d at 737.

Although Plaintiffs present no arguments to support the factors under the *Penn Central* test, it can be fairly inferred from the complaint and their response brief that Plaintiffs contend that the economic impact of the current zoning regulations has been severely detrimental because there is no market or demand for office space at the Property.  (*See* ECF No. 33, PageID #441, 447–48). Plaintiffs cite to evidence that: (i) Gale had attempted to market the Property for several years but there was no interest in potential buyers in development for office space, (ECF No. 33-1, PageID #455–56); and (ii) there is a depressed market and limited to no demand for office space, (ECF No. 33-6, PageID #551–52; ECF No. 33-7, PageID #559).  While it is certain that limiting the Property to use for office buildings under the current regulations would certainly diminish its

23

value, a partial taking is not established simply "because the owner is denied the highest and best use of the property." *Loreto Dev. Co. v. Vill. of Chardon*, Nos. 97-3502/97-3656, 1998 U.S. App. LEXIS 12183, at *11 (6th Cir. June 4, 1998) (citing *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592, 8 L. Ed. 2d 130, 82 S. Ct. 987 (1962) ("Concededly, the ordinance completely prohibits a beneficial use to which the property was previously devoted. However, . . . the fact that it deprives the property of its most beneficial use does not render it unconstitutional.")).

The evidence presented by Plaintiffs demonstrates that potential buyers were not interested in developing the Property for office space, but Plaintiffs have presented no evidence regarding how much the current zoning regulations have diminished the value of the Property itself. Such evidence is important because "while Courts are unwilling to use a certain percentage of diminution in value as a *per se* determination as to whether a taking has occurred, Courts have allowed a substantial diminution in value without finding a taking." *Harris v. City of St. Clairsville*, No. C2-04-CV-1179, 2006 U.S. Dist. LEXIS 92523, at *51–52 (S.D. Ohio Dec. 21, 2006) (collecting cases); *see also Clayland Farm Enters., LLC v. Talbot Cty.*, 987 F.3d 346, 354 (4th Cir. 2021) ("And yet this Court has found that a hypothetical 83 percent diminution in value was insufficient to establish a regulatory taking."); *Colony Cove Props., Ltd. Liab. Co. v. City of Carson*, 888 F.3d 445, 451 (9th Cir. 2018) ("Thus, we have observed that diminution in property value because of governmental regulation ranging from 75% to 92.5% does not constitute a taking."); *CCA Assocs. v. United States*, 667 F.3d 1239, 1246 (Fed. Cir. 2011) (explaining that the Federal Circuit was "aware of no case in which a court has found a taking where diminution of value was less than 50 percent."); *State ex rel. OC Lorain Fulton, L.P. v. City of Cleveland*, 2019-Ohio-1531, ¶ 15, 129 N.E.3d 532, 537 (Ohio Ct. App. 2019) ("Indeed, 46-60 percent diminutions of value have been deemed insufficient to constitute takings."). As discussed above, the Court has

found that the existing regulations have not destroyed all economic value and use of the Property. Without any specific argument about the amount of value that the Property has lost due to the current zoning regulations, the first factor is neutral at best and could be said to weigh in Seven Hills's favor.

For the next factor, the Court finds that Plaintiffs lacked a reasonable investment-backed expectation in developing the Property into a self-storage facility. "A 'reasonable investment-backed expectation' must be more than a 'unilateral expectation or an abstract need.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005–06, 81 L. Ed. 2d 815, 104 S. Ct. 2862 (1984) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 66 L. Ed. 2d 358, 101 S. Ct. 446 (1980)). The record demonstrates that the Property was never zoned for Plaintiffs' desired use at any time before or after Plaintiffs purchased the Property, nor do Plaintiffs argue otherwise. It was not reasonable for Plaintiffs to expect that the Property could be developed for use as a self-storage facility given the history of the applicable zoning regulations and Seven Hills's discretion in granting or denying amendments to the zoning regulations. *See Mindale Farms Co. v. City of Tallmadge*, No. 5:23-cv-00424, 2024 U.S. Dist. LEXIS 48872, at *13–14 (N.D. Ohio Mar. 20, 2024); *Oliver v. Etna Twp.*, No. 2:22-cv-02029, 2024 U.S. Dist. LEXIS 74641, at *38 (S.D. Ohio Apr. 24, 2024) (citing *Raceway Park, Inc. v. Ohio*, 356 F.3d 677, 685 (6th Cir. 2004)). Thus, this factor weighs heavily in favor of Seven Hills.

The final factor—the "character of the governmental action"—requires the Court to look at whether the challenged action: (i) "can be characterized as a physical invasion by government," or (ii) or "lacks a legitimate public purpose." *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009); *see also Coal. for Gov't Procurement*, 365 F.3d at 483. In this action, there is no indication or allegation of any physical occupation of the Property. Moreover, as

previously determined in the Court's substantive due process analysis, Seven Hills has legitimate objectives for its zoning actions which pass the rational-basis test. This factor weighs heavily in Seven Hills's favor.

Because the first factor is neutral at best, and the remaining two factors weigh heavily against a finding of a partial regulatory taking, the Court finds Plaintiffs cannot sustain such a claim as a matter of law. Accordingly, Seven Hills is entitled to summary judgment on Plaintiffs' regulatory takings claims.

### C.     Selective/Malicious Enforcement Claim

As an initial matter, the Court must determine what specific claim Plaintiffs assert in the complaint under the "Second Claim for Relief."  Seven Hills contends that Plaintiffs assert a selective/malicious code enforcement claim under Ohio law. (ECF No. 29-1, PageID #131–33). Plaintiffs respond that all claims in the complaint are federal claims brought under 42 U.S.C. § 1983 and the complaint gave Seven Hills proper notice of a selective enforcement claim under the Equal Protection Clause of the Fourteenth Amendment. (ECF No. 33, PageID #449).  Seven Hills replies that Plaintiffs have improperly raised an equal protection claim for the first time in their opposition brief and the complaint neither alleges nor provides reference to an equal protection violation. (ECF No. 35, PageID #594).

The complaint sets forth a "First Claim for Relief" and a "Second Claim for Relief."  The First Claim for Relief sets forth two causes of action—a substantive due process claim and regulatory takings claim.  The Second Claim for Relief sets forth a single cause of action for selective/malicious code enforcement. (ECF No. 1, PageID #4–5).  Plaintiffs maintain that all their claims were brought under § 1983, but the complaint belies their assertion.  The claims under the First Claim for Relief were clearly brought pursuant to § 1983.  First, that section of the

complaint is titled "First Claim for Relief (42 U.S.C. § 1983)."  (*Id.* at PageID #3).  Second, the complaint explicitly cites and references federal statutes and the United States Constitution, with Plaintiffs: (i) alleging that Seven Hills violated the substantive due process protections of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment; and (ii) asking for relief under 42 U.S.C §§ 1983 and 1988.  (*Id.* at PageID #4).  By contrast, the Second Claim for Relief makes no explicit, or even implicit, citation or reference to any federal statute or the United States Constitution.  (*Id.* at PageID #4–5).  The title of this section makes no reference to § 1983 and is labeled "Second Claim for Relief (Selective, Malicious Code Enforcement)."  (*Id.* at PageID #4).

The Court finds that the complaint sets forth a state law claim for selective/malicious enforcement.  Given the labeling of the causes of action, the numerous citations to specific federal authority under the First Claim for Relief, and the utter lack thereof under the Second Cause of Action, it is difficult to say that Seven Hills, or even the Court, were put on notice that Plaintiffs were asserting an equal protection claim.  In fact, nowhere in the complaint do Plaintiffs cite to the Equal Protection Clause, let alone mention the words equal protection.  Plaintiffs clearly knew how to assert a § 1983 claim and allege specific constitutional violations, as evidenced by the First Claim for Relief.  Under the Second Claim for Relief, the complaint did not give Seven Hills fair notice that Plaintiffs were asserting a federal equal protection claim against it.  *City of Pikeville v. Cebridge Acquisition, LLC*, No. 23-5770, 2024 U.S. App. LEXIS 10234, at *5–6 (6th Cir. Apr. 25, 2024) ("A complaint must 'plead claims and allegations with [sufficient] clarity' to give a defendant fair notice of the claims and the grounds upon which they rest." (quoting *Kensu v. Corizon, Inc.*, 5 F.4th 646, 650 (6th Cir. 2021) (alteration in original)).  Plaintiffs cannot expand or assert new claims for the first time in their response to Seven Hills's motion for summary

judgment.  *See Desparois v. Perrysburg Exempted Vill. Sch. Dist.*, 455 F. App'x 659, 666 (6th Cir. 2012).

> ### 1.    State Law Claim

Seven Hills argues that it is entitled to immunity as to Plaintiffs' selective/malicious enforcement claim pursuant to Ohio Rev. Code § 2744.02.  (ECF No. 29-1, PageID #131–32).  Plaintiffs essentially concede that a state law claim would be subject to such an immunity but maintain that the complaint asserts a federal claim under § 1983.  (ECF No. 33, PageID #449).

Under Ohio law, "it is well established that political subdivisions are immune from intentional torts under R.C. 2744.02."  *Garmback v. City of Cleveland*, 2022-Ohio-1490, ¶ 44 (Ohio Ct. App. 2022) (collecting cases) (alteration adopted).   Under Ohio Rev. Code. § 2744.02(A)(1), subject to limited exceptions, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  Seven Hills qualifies as a "political subdivision" under the statute, which is defined as: "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state."  Ohio Rev. Code § 2744.01(F).  Plaintiffs' claim for selective/malicious enforcement of code violations is an intentional tort.  The exceptions to political-subdivision immunity are enumerated under Ohio Rev. Code § 2744.02(B)(1)-(5), but the Court does not find that any of the exceptions apply in the instant case.  *See* Ohio Rev. Code § 2744.02(B)(1)-(5).  Accordingly, Seven Hills is entitled to immunity and summary judgment on Plaintiff's selective/malicious enforcement claim.

2. *Alternative Analysis on Equal Protection Claim*

Even if Plaintiffs had sufficiently alleged an equal protection claim, it would still fail as a matter of law.  Section 1983 creates a cause of action against any person who, under color of state law, deprives "any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  "A municipality is a 'person' under 42 U.S.C. § 1983, and so can be held liable for constitutional injuries for which it is responsible."  *Morgan v. Fairfield Cty.*, 903 F.3d 553, 565 (6th Cir. 2018) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)).  However, the Sixth Circuit has explained that municipality liability under § 1983 is limited to narrow circumstances:

> "A municipality may not be held liable under § 1983 on a respondeat superior theory—in other words, 'solely because it employs a tortfeasor.'"  *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (quoting *Monell*, 436 U.S. at 691).  Instead, a plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).  A plaintiff does this by showing that the municipality had a "policy or custom" that caused the violation of his rights. *Monell*, 436 U.S. at 694.

*Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019).

There are four ways a plaintiff can establish that a municipality's policy or custom caused her constitutional violation: he may show "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations."  *Id.* (citation and internal quotation marks omitted).  Further demonstrating that the pleadings failed to assert an equal protection claim under § 1983, the complaint does not provide any allegations as to any policy or

custom of Seven Hills, let alone one that was the driving force behind the alleged disparate treatment and selective enforcement of the code violation.

Plaintiffs also provide no evidence to support the existence of any such policy or custom. There is no evidence on the record of any official policy or legislative enactment that Gale was to be targeted for citations, that an official with decision-making authority ratified the alleged illegal targeting, or inadequate training or supervision was at issue.  Plaintiffs have also not proffered any evidence of a history of wide-spread and persistent abuse and violations of federal rights by Seven Hills, or a custom of tolerance of/acquiescence in the same.  On the record before the Court, Plaintiffs have provided no evidence of animus, ill-will, or any knowledge by Seven Hills. Plaintiffs only argue that they are being treated unfairly and differently from other similarly situated persons and cite evidence of other driveways throughout the city which have not been cited for the same violation.  (ECF No. 33, PageID #450 (citing ECF No. 33-1, PageID #457–60).

Plaintiffs provided the following evidence: (i) assertions by Gale that he has noticed around 100 other driveways in Seven Hills that are in worse condition than his own, (ECF No. 33-1, PageID #457–59); (ii) photographs showing the driveways for 20 of these properties, (ECF No. 33-2); and (iii) 46 photographs showing driveways in Seven Hills that were patched with asphalt—a method of fixing that Gale attests was rejected by Seven Hills, (ECF No. 33-1, PageID #459–60; ECF No. 33-3).  Gale attests that he does "not believe" that any of the above properties have been cited for the same code violation.  (ECF No. 33-1, PageID #460).  Plaintiffs' belief does not constitute evidence that these other properties did not receive citations or that Seven Hills, or its employees, refused to cite or ignored these driveways.  The evidence solely demonstrates that these other driveways might also be in violation of the city ordinance.  Even if this evidence could be used to support a claim of disparate treatment, it does not establish that Seven Hills had a custom

30

of tolerating or acquiescence in widespread and persistent civil rights violations.  Thus, Plaintiffs could not sustain an equal protection claim even if they had asserted one.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Seven Hills's motion for summary judgment (ECF No. 29) and finds that Seven Hills is entitled to judgment as a matter of law.

**IT IS SO ORDERED.**

Date: August 12, 2024

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**

31